WILLIE B. SPEARS, RESPONDENT, v. GEORGE SCHANTZ, APPELLANT.—246 SW (2) 399.

Springfield Court of Appeals. Opinion filed February 6, 1952.

*C. A. Powell,* of Dexter, *Stephen Barton,* of Benton, for Appellant.

882

884

*Joe Welborn* and *R. Kip Briney,* of Bloomfield, *D. W. Gilmore* of Benton, for Respondent.

McDOWELL, J.—This is an action for damages for personal injuries sustained in the operation of a tractor while engaged in the making of a sharecrop by plaintiff on lands of defendants in Stoddard County, Missouri. The suit was filed April 13, 1949, in the Circuit Court of Stoddard County, transferred, on change of venue, to Scott County, Missouri, where it was tried before a jury, resulting in a verdict against defendant, George Schantz, on the petition for $3,000.00, and a verdict for $275.00 in favor of defendant, George Schantz, on defendant's counterclaim. From the judgment on this verdict, defendant, George Schantz, appealed.

The petition is grounded upon acts of primary negligence on the part of defendant, George Schantz, as follows:

"(a)  In wrongfully and negligently failing to provide a reasonably safe place for the plaintiff to work as the servant of the defendants.

"(b) In wrongfully and negligently failing to provide reasonably safe tools and machinery with which plaintiff should perform his duties as the servant of the defendant.

"(c) In wrongfully and negligently permitting the aforesaid tractor to be operated with the cover and housing and shield removed from the aforesaid pulley shaft and cotter pin.

"(d) In wrongfully and negligently placing and leaving the aforesaid gear mechanism in an "in gear" position while said housing and cover and shield was removed from the aforesaid pulley shaft and cotter pin.

"(e) In wrongfully and negligently ordering the plaintiff to start the motor of said tractor, while the aforesaid cover, shield, and housing was removed, and while said gear mechanism was in an "in gear" position.

"(f) In wrongfully and negligently failing and refusing to warn the plaintiff of the "in gear" position of the said gear mechanism, and of the fact that the cover, housing and shield was removed from the said pulley shaft and cotter pin."

The court directed a verdict for defendant, Bertha Schantz, and, since there was no appeal from the action of the court in this matter, we will not set out the pleadings as to her.

Defendant, George Schantz, filed an answer and counterclaim. In the answer it was admitted that defendant was owner of the land in question and was the sole owner of the Massey-Harris tractor and that said tractor was equipped with a pulley shaft which revolved while a certain mechanism was in gear position and the tractor motor running. The answer admitted that the pulley shaft was so constructed that in the end of the shaft a cotter pin protruded and revolved when the pulley shaft revolved. It admitted, on the day of the injury, May, 1948, while plaintiff was working on said tractor, that the pulley was not on the pulley shaft and that the cotter pin was, at the time, in the end of said shaft and there was no guard or protection over said shaft. The answer admitted that plaintiff, at the time of the injury, proceeded to start the motor of the tractor while the gear mechanism was in an "in gear" position and that the shaft and cotter pin commenced to revolve when the motor was started.

The answer denied all of the other allegations in plaintiff's petition. The answer then stated that during the year 1948, and for three years prior thereto plaintiff lived in the house located on defendant's land where said sharecrop was being made; that, prior to 1948, plaintiff paid rent for the use of said house and did mechanical work in different garages; that plaintiff was a skilled mechanic and was experienced in

farming. The answer then pleaded that in March, 1948, this defendant and plaintiff entered into a sharecrop agreement whereby plaintiff agreed to plant approximately 20 acres of land belonging to defendant and wife to cotton and plaintiff was to perform all labor in connection with the planting, cultivating and harvesting of said cotton and was to receive one-half the proceeds therefrom; that defendant was to furnish the seed, tractor and equipment used in the planting and cultivating of said cotton; that the tractor furnished plaintiff was one kept on the farm during the time plaintiff lived in defendant's house; that plaintiff was familiar with the tractor and the use and operation thereof; that he had used the tractor prior to the accident in question; that several days before the accident plaintiff and defendant had removed the pulley from the pulley shaft and attached cultivator gangs to said tractor and that, at that time, plaintiff saw and knew that the pulley was not on the shaft and the guard covering the same was not thereon. The answer pleads that after the cultivator gangs were attached to the tractor plaintiff used it in bedding up the entire 20 acres of land he was to sharecrop, and then removed the cultivator gangs and attached a team planter to the tractor and used the same for placing fertilizer in the ground; that after the fertilizer was used plaintiff removed the fertilizer attachment and started to plant cotton with the planter attached to the tractor; that while the tractor was stopped and the gear mechanism was in an "in gear" position, plaintiff, of his own volition and without instruction from defendant, stood on the right hand side of the tractor in such a position that his clothing came in contact with the pulley shaft when he pressed the starter of the tractor causing the pulley shaft and cotter pin to revolve and from this plaintiff sustained his injuries. The answer then pleads that plaintiff could have as easily started the tractor from the left side or the rear thereof without coming in contact with the pulley shaft and would have avoided his injury. The answer pleads that plaintiff knew, at the time, that the tractor could be started from the left or rear thereof and that he knew or by the use of ordinary care could have seen and known that there was no guard on said pulley shaft and that said pulley shaft was running when the gear mechanism was in position. The answer pleads that plaintiff, by the use of ordinary care, could have seen and known that the gear mechanism was in an "in gear" position.

The answer then pleads that whatever injury plaintiff sustained was due to his own negligence which directly caused or contributed to his injury; that whatever injuries plaintiff sustained were caused by the risks which he assumed in using the tractor.

It is unnecessary to state the counterclaim as there is no contention about the finding of the jury on this matter.

To avoid confusion, we will hereafter refer to respondent as plaintiff

and to appellant as defendant, which position they occupied in the lower court.

Defendant, under points and authorities, states 18 separate assignments of error. Because of the length of each assignment of error, we will take them up in order in this opinion.

A brief statement of facts is necessary in the decision of the issues involved. The evidence on the part of plaintiff is to the effect that he was employed to sharecrop twenty acres of cotton in the year 1948 on the land of defendant and wife; that by the terms of the sharecrop agreement defendant was obligated to furnish land, machinery and seed for such crop and plaintiff was obligated to do the work necessary to make the crop; that, pursuant to such agreement, defendant furnished plaintiff a Massey-Harris tractor with power take-off mechanism attached. The testimony of plaintiff is that he was an automobile mechanic and had worked one time on the motor of this tractor but was wholly unfamiliar with the gear mechanism of the power take-off and the pulley shaft operated therewith. He admits that he had used the tractor for approximately five days in disking the cotton land, placing the fertilizer thereon and bedding the same up for cotton but denies that he knew, or had been informed, prior to his injury on the 3rd day of May, 1948, that the pulley shaft and the cotter pin in the end thereof was unguarded by a shield made therefor and that the pulley was off same. He testified that, being unfamiliar with the mechanism of the power take-off, he had not noticed the dangerous unguarded position of the pulley shaft while using the tractor and did not know that the pulley shaft revolved when the gear mechanism was in an "in gear" position and the motor was running. He also, definitely, testified that at no time prior to his injury, had he been warned that the pulley shaft and cotter pin was unguarded. He testified he had broke down the cultivator before attaching the planter but did not see this pulley shaft. He testified that in putting the cultivator on the tractor to bed up the land that defendant had removed the pulley from the shaft and placed the cotter pin therein. He testified that on the day of the injury he and the defendant attached a team planter to the tractor and the power take-off; that they tried the planter at the garage, which was located on defendant's land where he kept all of his machinery, about a quarter mile from the cotton field; that defendant then raised the planter and fastened it up with the power take-off, turned it over to him and he drove it to the field; that defendant and plaintiff's son drove to the field in defendant's truck; that at the field plaintiff turned the tractor over to the defendant, who drove it 25 or 30 feet, testing whether a board, which they had placed in the planter to drag the clods off the ridges, would work; that the board did not work and defendant got off the tractor after he stopped the motor and left the power take-off in an "in gear" position, which action of defendant, plaintiff had no knowledge; that in order to remove the board from

the planter defendant directed plaintiff to start the motor; that he did not warn plaintiff that the mechanism of the power take-off was in an "in gear" position or that the pulley shaft and cotter pin were unguarded by the shield made therefor. Plaintiff testified that this power take-off shaft extended out on the right side of the tractor in front of the wheel about four inches and had a cotter pin in the end of the shaft; that at the direction of defendant, plaintiff went to the right side of the tractor, turned the ignition key and pressed on the starter; that while he was performing this duty at request of defendant, defendant was talking to him and looking right at him some six feet away but did not warn him of the danger of the unguarded shaft nor tell him that the power take-off was in an "in gear" position; that the motor started, the power take-off shaft revolved with the key therein catching plaintiff's clothing and causing the injury.

Defendant's testimony is to the effect that plaintiff had lived on his farm three years; that during that time he kept the tractor in the garage with his other machinery, some hundred yards from plaintiff's house; that plaintiff had used this tractor before in working for him plowing and cutting wood and had hauled manure ten days with it; that he had helped remove the pulley when the cultivator was placed on the tractor a short time before the injury and saw and knew that the pulley shaft was left unguarded when the pulley was removed. He testified that approximately three days before the injury he went to the field where plaintiff's boy was bedding up the cotton land and the boy asked him to drive the tractor to straighten out the rows; that he did drive the tractor and discovered that the pulley shaft and cotter pin was unguarded and that, at that time, told plaintiff that the shield must be placed over this pulley shaft and warned him of the danger. He admitted that on the day of the injury he and plaintiff put the planter on the back of the tractor at the garage and that plaintiff drove it to the field; that the tractor was turned over to him in testing the use of a board in the planter and that he drove it 25 to 30 feet, stopped the motor, got off the tractor leaving the power take-off in an "in gear" position to help remove the board from the planter. He stated the shaft extended out from the tractor approximately four inches; that it was an inch and a half in diameter with a cotter pin in the end thereof; that at the time he drove the tractor, testing out the board on the planter, he did not notice that the pulley shaft was then unguarded. He denied that he ordered or directed plaintiff to start the tractor but stated plaintiff did it of his own volition. He admitted he did not warn plaintiff of the unguarded shaft and cotter pin at the time of the injury and he did not tell him that he had left the power take-off in an "in gear" position. He denied that he said, "My God, it was all my fault," but stated that he said, "My God, why did this have to happen to you here?" or words to that effect.

One of plaintiff's witnesses testified that after the injury defendant

told him that he saw plaintiff was going to be caught by the pulley shaft but thought that it would turn him loose.

Plaintiff denied that defendant told him the pulley shaft was unguarded and that the shield would have to be put back on as defendant testified.

Defendant's first assignment of error is that the trial court erred in refusing defendant's motion for a directed verdict at the close of all of the evidence and in refusing defendant's motion for a judgment on the pleadings because, first, that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff's petition, in substance, pleads that plaintiff was employed by the defendants to make a sharecrop on defendants' land in the year 1948; that it was the duty of the defendants to furnish plaintiff with reasonably safe tools and machinery with which to work said crop and to provide plaintiff with a reasonably safe place in which to work; that defendants negligently failed in their duty to provide plaintiff with reasonably safe machinery with which to make said crop and a reasonably safe place to work in that they furnished plaintiff a Massey-Harris tractor equipped with power take-off mechanism; that at the time the shaft of the power take-off mechanism which protrudes from the right side of said tractor and which at the time had a cotter pin in the end thereof was left unguarded and defendants negligently failed to place on said pulley shaft the housing or shield or cover which protects persons using said machinery from injury while the pulley shaft and cotter pin therein revolves.

The petition pleads that plaintiff, as the servant of defendants, at all times acted under the supervision and direction of defendants and that on May 3, 1948, while plaintiff was assisting defendants in making said crop and while the power take-off on the tractor was in an ''in gear'' position, having been so placed by defendant, defendant ordered plaintiff to start the tractor and that, in doing so, plaintiff's clothing was caught by the revolving shaft and cotter pin and plaintiff was seriously injured.

The petition pleads that plaintiff's injuries were the direct and proximate result of the defendant in failing to furnish plaintiff with a safe place to work and in failing to provide reasonably safe tools and machinery for plaintiff to perform his duties as servant of defendant and in negligently leaving the gear mechanism in an ''in gear'' position while the pulley shaft was without the cover or shield and in negligently ordering the plaintiff to start the motor or tractor while the pulley shaft was exposed and unprotected and in failing to warn plaintiff of the danger in starting the tractor when in an ''in gear'' position while the gear mechanism was so exposed.

The case was tried in the lower court on the theory that the relation of master and servant existed between plaintiff and defendant. It is elementary law that a case must be heard in the appellate court

upon the same theory as that upon which it was tried in the lower court. Snyder v. American Car & Foundry Co., 322 Mo. 147, 14 S. W. 2d 603.

In Daniels v. Luechtefeld, Mo. App., 155 S. W. 2d 307, 312, the law is stated:

"That an employer has a nondelegable duty to furnish tools and appliances which are reasonably safe for the purposes for which they are intended is too well established to need the citation of authorities in support thereof." Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S. W. 2d 954, 959; Watson v. Carthage Marble & White Lime Co., Mo. App., 290 S. W. 649; Shey v. Central Coal & Coke Co., 323 Mo. 1058, 21 S. W. 2d 772.

We cannot agree with defendant that the petition does not state facts sufficient to constitute a cause of action. It pleads the relationship of the parties, the legal duty of the defendant and the facts constituting the breach of such duty and the injury sustained as a proximate result of such breach of duty.

A more serious question arises as to whether or not plaintiff was guilty of contributory negligence as a matter of law under the evidence. Plaintiff testified that he at all times was working under the control and direction of the defendant; that while he had worked on gas motors he was wholly unacquainted with the gear mechanism of the power take-off, which was on the tractor furnished him by defendant. He stated he did not know or notice whether or not the shaft revolved when the motor was running and the gear mechanism was in an "in gear" position; that he did not know that defendant had left the shield or cover off the pulley shaft and the cotter pin in the end thereof; that while he drove the tractor some five days before the injury in bedding up the land he was to cultivate and in placing fertilizer therein, he had not seen nor noticed that this pulley shaft was unprotected and that because he was wholly unacquainted with the workings of the gear mechanism of the power take-off. He admitted that he, together with defendant, prior to his injury, had put the cultivator on the tractor at the garage, which required the removing of the pulley from the shaft, but stated he did not remove the pulley and did not know how this mechanism worked. Plaintiff testified he did not remove the part of the cultivator that protected the shaft but merely broke down the cultivator. He testified that he helped defendant put the planter on the back of the tractor the day of the injury but he states that defendant raised the cultivator and fastened it up. He testified that he drove the tractor approximately a quarter of mile to the field but that he did not let the planter down with the power take-off. He stated defendant came to the field with plaintiff's son in his truck and that he turned the tractor over to defendant who let the planter down. Plaintiff testified that when he

left the tractor the gear mechanism was out of gear; that defendant drove the tractor about 30 feet, stopped the motor and left the gear mechanism in an "in gear" position without the knowledge of plaintiff and that, together, they tried to remove a board from the planter but not succeeding, defendant directed plaintiff to start the motor; that he gave plaintiff no warning that the gear mechanism was in an "in gear" position or that the pulley shaft was unprotected and that defendant was looking right at plaintiff talking to him when he started the motor and was caught by the revolving shaft. Plaintiff testified that at no time was he ever warned by defendant that this pulley shaft was unprotected either by the shield or by the pulley being thereon; that the tractor was under the control and in the possession at all times of the defendant.

Defendant testified that on the day before while plaintiff was bedding up the land he drove the tractor across the field to straighten out the rows for plaintiff and discovered the unguarded condition of the pulley shaft; that he then told plaintiff to put the guard on the shaft; that the guard was in the garage within a few feet of where the tractor was.

Under this conflict of testimony we find that the question of contributory negligence was one for the jury to determine whether or not the danger was simple and obvious. Kirkpatrick v. American Creosoting Co., Mo. App., 37 S. W. 2d 996, 1003.

Defendant cites Blankenship v. St. Joseph Fuel Oil & Mfg. Co., supra. This case holds that the employer owed to the employee the nondelegable duty of exercising due care to furnish a reasonably safe place and reasonably safe tools and appliances with which to work. The court held in the case there was no liability because the unguarded condition of the chain and sprockets was patent and, in passing upon the case, the court, on page 959, said:

"The sweeper of the instant case was not a complicated machine. The chain and sprockets were in view and as readily comprehensible as the chain and sprocket of a bicycle, with which plaintiff compared them. * * *"

These facts are so different from the case at bar as to be clearly distinguished. The Blankenship case was a suit against a bailee by an employee of the bailor and the court said that plaintiff's employer, who had used the sweeper time and again, knew as much about the condition as did defendant, including the condition of the chain and sprockets, and that it had remained in the same condition for approximately two years. It seems in this case that plaintiff's employer had rented a sweeper a number of times; that he knew of the condition of the sweeper which had not been changed for some two years and that he selected the sweeper which makes the facts entirely different from the case at bar.

It is well settled law that each case must be determined upon the facts of that particular case.

Under the facts in the case at bar we find that the defect of the machinery which made the tractor dangerous was not so obvious or patent as to constitute negligence as a matter of law. We have examined all of the cases cited by defendant and each of them lays down the proper rule of law but each of them differs from the case at bar upon the facts. In the case at bar plaintiff was not an experienced mechanic as to the mechanism of power take-off machinery and, under his testimony, knew nothing about it. From what use he had made of the tractor before his injury we cannot say as a matter of law that he should have known or should have seen the dangerous condition thereof, especially where, under his testimony, he was unacquainted with the use of such mechanism. There can be no doubt from this testimony that the defendant was there taking an important part in the work of preparing and planting this crop. The jury would have been warranted in finding that he was specifically directing the work, from defendant's testimony alone, and we think the facts in this case do not show that the dangerous condition of the pulley shaft was so obvious as to constitute contributory negligence as a matter of law.

Under this assignment of error defendant contends that plaintiff assumed the risk and, therefore, defendant is not liable as a matter of law.

In Shey v. Central Coal & Coke Co., 323 Mo. 1058, 21 S. W. 2d 772, 774, the Supreme Court, en Banc, states the law thus:

"It is the duty of the master to use ordinary care to furnish his servant safe appliances with which to do his work, and the servant does not assume the risk from the use of unsafe implements, unless the danger is so glaring and obvious that a reasonably prudent man would not attempt to use them. * * *"

This court, in Walls v. Thompson, Mo. App., 119 S. W. 2d 43, 48, states the law:

" 'An employee assumes those risks which are ordinarily incident to the discharge of his duty in any particular employment, and also those not ordinarily so incident, but of which he has actual or constructive knowledge, with full appreciation of the danger that may flow therefrom.' "

This case also holds that the burden of proof of the assumption of risk is on the defendant.

In York v. St. Louis-San Francisco Ry. Co., 333 Mo. 105, 62 S. W. 2d 475, 477, the court states the law:

" 'The rule is well settled by controlling decisions of the United States courts that under the federal statute a servant assumes extraordinary risks incident to his employment or risks caused by the

master's negligence which are obvious or fully known and appreciated by him. * * * If the hazard would be plainly apparent to a reasonably prudent person in like situation the servant cannot be supposed to be ignorant of it.' ''

Since we have held that, under the facts in the case at bar, the question of whether or not the unprotected shaft and cotter pin were patent was a question for the jury and was not so obvious as to constitute contributory negligence as a matter of law, we, likewise, hold that the danger in the case at bar was not so glaring and obvious that a reasonably prudent man would not attempt to use them so as to constitute assumption of risks as a matter of law.

Assignment of error No. II complains that the evidence was not sufficient to support the verdict of the jury.

The rule of law governing the determination of the sufficiency of the evidence to support the verdict is properly stated in Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S. W. 2d 163, 167, as follows:

'' '* * * Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' ''

An examination of the evidence clearly shows that there was substantial evidence to support the verdict of the jury and we find against defendant on his second assignment of error.

Assignment of error No. III complains that the hazardous condition of the unguarded pulley shaft and cotter pin was patent and apparent to a reasonably prudent person, and that plaintiff is charged with knowledge thereof. We fully passed upon this assignment of error in deciding the issues raised under assignment of error No. I.

We hold that the evidence in the case at bar does not show the hazardous condition of the unguarded pulley and cotter pin to be so obvious as to charge plaintiff with knowledge of its condition as a matter of law. An examination of the cases cited by defendant will show that the rule of law is properly set out as we have declared in the case at bar but that the cases differ on the facts involved.

Assignment of error No. IV, by defendant, is that plaintiff could have safely started the tractor from the left side or rear and that he was guilty of contributory negligence in starting the tractor from the right side, which he knew or should have known was a dangerous position.

With this contention we cannot agree. We hold that had the shaft and cotter pin in the end thereof, which was a part of the mechanism

898

of the power take-off, been properly guarded by the shield it would not have been dangerous to start the tractor from the right side and the only thing that would make the defendant guilty of contributory negligence, under the facts in this case, would be if that danger was patent so as to either give actual knowledge to plaintiff of the condition or constructive knowledge. It was not the place where the tractor was started from that caused the injury, it was the negligence in failing to properly shield the pulley shaft and cotter pin.

Defendant cites Hunter v. Busy Bee Candy Co., 307 Mo. 656, 271 S. W. 800. This case was where the servant was employed by a candy company in hauling candy by means of a horse and wagon from its store to various retail stores. He claims to have suffered injury while attempting to remove an automobile out of his way from in front of defendant's store. He relies upon primary negligence on the part of the master in failing to furnish him a helper or to furnish proper appliances with which to remove the automobile. He contends that his injury was the proximate result of such negligence. The court states the law on Page 803 of the opinion as follows:

"It is axiomatic that a master owes to his servant the duty of furnishing him a reasonably safe place in which to work, and also reasonably safe and suitable appliances with which to do his work. * * * This duty, however, does not make the master an insurer of the safety of the servant, for, on the other hand, the servant assumes the risks that are ordinarily incident to and inherent in the work itself. * * * But the servant does not assume risks of his employment that are caused by the master's negligence. Williams v. Pryor, 272 Mo. 613, 200 S. W. 53; Tull v. Railway Co. (Mo. App.) 216 S. W. 572. And, unless the danger or risk occasioned by the master's negligence is so glaring and obviously apparent to the servant as to threaten immediate and almost certain danger, then the servant neither assumes the risk nor can he be held guilty of contributory negligence as a matter of law. * * *"

This is the same law that we declared in passing on assignment of Error No. 1.

The question, however, in the case cited under this point was whether or not plaintiff's injury was the proximate and immediate result of defendant's negligence in failing to furnish help after it had been requested or was the injury the proximate and immediate result of plaintiff's own negligence or assumption of risks? Under the evidence it was apparent that the injury was caused as a result of over exertion and effort on the part of the plaintiff in moving the automobile. The court held that plaintiff's knowledge of his own physical strength and limitations was superior to that of the master and that the master was not liable for consequent injuries and that is true whether the established rule be founded on assumed risks or

contributory negligence of the injured servant. It is very clear that this case is no authority for defendant's contention under point IV.

An examination of the other cases cited by defendant are likewise not in point. We hold there is no merit in this contention.

Assignment of error No. V complains of error of the trial court in refusing to permit defendant to testify that plaintiff would not have been in any danger in getting on the seat in starting the tractor nor from starting the tractor from any position excepting the right side.

In order to determine the admissibility of this evidence it is necessary to properly determine the issues involved in the case.

Plaintiff's petition is based solely on negligent acts of the defendant in furnishing him a tractor equipped with power take-off mechanism which had a shaft extending out of the right side of such tractor with a cotter pin in the end thereof and the tractor so furnished was without a shield over this shaft and cotter pin which made the tractor dangerous. The petition also complains that defendant negligently left the gear mechanism in an "in gear" position with this pulley shaft unprotected by the shield and that defendant directed him to start the tractor, knowing this condition of the pulley shaft without warning. We must conclude from plaintiff's pleadings that if the tractor, furnished plaintiff with which to perform his part of the contract, was not reasonably safe machinery it was solely because the pulley shaft on the tractor was unguarded. Now the only theory upon which the evidence offered by defendant that the tractor could have been started from the left side or from the seat would be to show that plaintiff was contributorily negligent in that he did not use reasonable care for his own safety. We submit that the authority cited by defendant, to support his contention, is not in point. Certainly the man who got out of the wagon and started to push an automobile out of the road must be held to know his own strength and be required to use reasonable care not to injure himself, but, in the case at bar, the plaintiff testifies that he was wholly ignorant of the condition of the unguarded shaft and unacquainted with the danger. The defendant admits that he had discovered the unguarded condition of the shaft and did know of the danger. The cases all hold that the servant does not assume the risks of his employment that are caused by the master's negligence unless the negligence is so glaring and obviously apparent to the servant as to threaten immediate and almost certain danger. There certainly was no question in this case that the tractor could have been started from the left side thereof or from the seat without danger to plaintiff. It is admitted that the only dangerous condition of the tractor was the unguarded shaft which extended out from the right side. The answer states "and the plaintiff well knew at the time that said

tractor could have been started from either the left or the right hand side or the rear thereof.'' If this be true defendant admits, in his pleadings, that the tractor could be started from the right side and, therefore, before he could be excused from his negligent acts in leaving the pulley shaft unguarded, he must show knowledge of this dangerous condition, either actual or constructive, on the part of plaintiff and we hold that the evidence was not admissible; that it did not tend to prove or disprove the issues in the case, first, whether or not defendant furnished machinery unsafe to do the work plaintiff was required to do, and, secondly, whether such negligence was the proximate cause of the injury of plaintiff or whether or not plaintiff was negligent in being injured by a defect that was patent, he being required to use reasonable care for his own safety. We hold there is no merit in this assignment of error.

Assignment of error No. V is practically the same as assignment of error No. IV. We think there is no merit in this assignment. There was no issue about danger from starting the tractor from the seat or in any position except that on the right side of the tractor.

Assignment of error No. VI complains of the action of the trial court in refusing to discharge the jury because of voluntary statements of Ruby Spears, wife of plaintiff, who testified that defendant said he would see plaintiff through the summer and take care of the hospital bills, because of the highly prejudicial character of such testimony.

We agree that this objection is well taken. In 22 C. J., page 320, section 353, the law is stated:

''* * * nor does the offer of a master to provide his injured servant with a nurse or to pay the doctor's bills and wages of the servant during his incapacity tend to prove liability of the master for the injury. * * *''

In Smith v. Fine, 351 Mo. 1179, 175 S. W. 2d 761, the court held similar testimony to be improper on the theory of implied admission against interest. We quote from that opinion on page 767:

''* * * The admissibility of the statement with respect to medical attention against defendant Fine may be close, but, in the circumstances, we consider the statement an offer of remedial assistance. State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 154, 101 S. W. 2d 14, 19 (7), states that an argument turning against a corporation the fact it had voluntarily furnished necessary medical care and attention at considerable expense as an admission of negligence and liability was unfair and highly prejudicial. * * *''

It is contended by plaintiff that the court withdrew this testimony from the jury and instructed that it be disregarded and thus cured the error and, to support the contention, he cites Welch v. Thompson, 357 Mo. 703, 210 S. W. 2d 79, 86. The facts in this case were that plaintiff was asked if she ever had a surgical operation and she

answered that she had had no surgical operation and said, "I think what they have found * * * is when I must have had several stitches when one of my six children were born * * *." So the question involved was as to the plaintiff having children which the court held irrelevant. The court said the only purpose of such evidence was to play upon the sympathy of the jury to enhance the jury award. The court stated the general rule as follows:

"* * * We see no exceptional circumstances which would place the objectionable part of the answer without the rule that, ordinarily, the withdrawal and exclusion of erroneously admitted evidence leaves no ground for reversing the judgment on account of such admission. * * *"

It will readily be seen that the object of the testimony offered in this case was quite different from the object of the testimony offered in the case at bar. In the case at bar the testimony was conflicting as to whether the defendant used reasonable care in furnishing plaintiff with safe machinery to perform the duties he was required to do so as to constitute him negligent. This testimony was solely given to show that defendant was guilty of negligence in not so furnishing safe machinery and was highly prejudical. The fact that the court withdrew the testimony from the jury did not destroy its damaging influence. This was a close case upon the facts and only nine jurors signed the verdict. Thus we hold that there were exceptional circumstances which placed the objectionable answer without the rule so stated by the court in the Welch case.

We have examined the other cases cited by plaintiff to sustain his contention that the error was cured, but the facts are different from the case at bar.

Assignment of error No. VII complains of error in not sustaining a motion for directed verdict. We have already ruled upon this proposition.

Assignment of error No. VIII complains that the trial court erred in refusing defendant's instruction No. E, which is a sole cause instruction.

This instruction told the jury that if they found defendant knew or by the exercise of ordinary care could have known that the pulley shaft revolved when the engine was running and the gear mechanism was in an "in gear" position and that it was obviously dangerous for him to come in contact with the pulley shaft and with that knowledge he came in contact therewith when the engine was started and that such act was the sole cause of his injuries then their verdict should be for defendant.

In Teague v. Plaza Express Co., 356 Mo. 1186, 205 S. W. 2d 563, Judge Hyde, speaking for the court, on page 567 of the opinion, states:

"* * * However, the proper way to submit this issue would be to hypothesize the essential facts of her conduct as shown by the testi-

mony rather than to attempt to split them into several separate charges submitted disjunctively, some of which as stated might not alone be sufficient as a sole cause submission, * * * We think this instruction is subject to the criticism that it did not make clear the decisive fact issues on sole cause and allowed consideration of what might be contributory negligence only. ''

Under the evidence in the case at bar defendant admitted that he knew of the unguarded position of the pulley shaft and, under plaintiff's evidence, he directed plaintiff to start the tractor without warning. The jury certainly would have been justified in finding that defendant was negligent as charged. The question of whether or not plaintiff had knowledge of this dangerous condition and thus was contributorily negligent and could not recover depended upon the question of whether or not the dangerous condition was patent. We think this instruction does not properly hypothecate the sole cause upon sufficient facts to justify its giving but rather submits it upon facts which constitute contributory negligence. This instruction should have negated the evidence of defendant's negligence, either that the defendant was not negligent or, if negligent, such negligence did not cause the injury or contribute thereto but that the negligence of the plaintiff was the only and sole cause thereof. Therefore, we hold that the instruction is subject to criticism that it did not make clear the decisive fact issues on sole cause and allowed consideration of what might be contributory negligence only.

In Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S. W. 2d 698, 702, the court states the law as follows:

''* * * True, these cases were submitted on both primary negligence and humanitarian negligence, but this circumstance is immaterial since, in any event, defendant's negligence must be negated as the condition upon which sole cause negligence of a plaintiff, or third party, may be found. * * *''

In the case at bar the question of defendant's negligence was in issue, therefore, it differs from cases where liability is based upon the humanitarian doctrine and contributory negligence is not an issue. We thus hold that there was no error in refusing this sole cause instruction.

Assignment of error No. IX complains of the court's refusal to give defendant's instruction No. F. The law is properly declared in this instruction but the court gave this law in other instructions, therefore, it is not error.

In assignment of error No. X complaint is made as to the refusal of instruction No. G. We have previously passed on this question under assignment of error No. IV. We find no merit in the contention.

In assignment of error No. XI defendant complains that the court erred in refusing to give instruction No. J requested by defendant because it was converse to plaintiff's main instruction and told the

jury that, unless they found defendant requested and instructed plaintiff to start the tractor, their verdict should be for defendant.

Plaintiff's petition relies upon several grounds of primary negligence for recovery and in instruction No. I submits the cause to the jury in the conjunctive, that is, it requires the jury to find all of these grounds of negligence in order to find for plaintiff. Among such grounds of negligence it submitted the ground that stated defendant directed plaintiff to start the tractor knowing, at the time, of the danger involved therein without warning plaintiff.

In Kimbrough v. Chervitz, Mo. Sup., 186 S. W. 2d 461, 466, the Supreme Court discusses the law thus:

"* * * We permit a plaintiff to hold a verdict under a verdict directing factual instruction submitting several charges of negligence in the conjunctive when the evidence establishes some but fails to establish all of the submitted grounds of recovery against defendant (technically incorrect but tolerated) on the reasoning plaintiff assumed an unnecessary burden with respect to submitted grounds devoid of proof and defendant was not prejudiced. Consult cases cited arguendo in Lindquist v. Kansas City Pub. Serv. Co., 350 Mo. 905, 909, 169 S. W. 2d 366, 368. * * *"

There can be no doubt that defendant is entitled to a converse of plaintiff's main instruction, yet where all of the grounds of negligence are submitted in the main instruction in the conjunctive, defendant would not be entitled to a verdict if the jury found that defendant did not request or instruct plaintiff to start the tractor for the reason that liability might arise where the defendant did not use reasonable care to furnish plaintiff with safe machinery with which to work and that plaintiff, without knowledge of the dangerous condition of such machinery was injured. The court would say that the question of the defendant directing the plaintiff to start the tractor was surplusage, where there was no proof of such fact, so we find there is no merit in this allegation of error.

Assignment of error No. XII complains of the refusing of instruction No. K requested by the defendant.

Instruction No. K undoubtedly makes a clear statement of the law. It tells the jury that if the unguarded pulley shaft was patent or obvious, there was no duty on the part of defendant to warn plaintiff of its dangerous condition. In this opinion we have cited numerous cases holding that to be the law and we held that the question, under the facts in this case, was one for the jury. Certainly, the defendant was entitled to have all the issues as to his defense under the pleadings submitted to the jury. It was clearly error not to give this instruction unless the court covered the subject matter in other instructions given.

Instruction No. I, given for plaintiff, in part reads: "* * * and if you further find and believe from the evidence that at said time and place the plaintiff * * * had no knowledge of the fact * * *

that said cover and housing or shield was off of said pulley shaft, * * * and if you further find and believe that at said time and place, the plaintiff Willie B. Spears was ignorant of the fact * * * that said cotter pin was protruding from the pulley shaft, and was exposed * * *''

This same instruction tells the jury that they should find for plaintiff unless they find against plaintiff on the defense of assumption of risk or the defense of contributory negligence submitted in other instructions. And in instruction No. III, requested by the defendant, and given by the court, the court instructed the jury that a person is presumed to know and see what could, by the use of ordinary care, have been known and seen and that if they believe and find from the evidence that the pulley shaft was located on the tractor in such a position that the plaintiff by the use of ordinary care would have seen and known by using said tractor and working around said tractor that said pulley shaft was not guarded and that it revolved when the engine was running and the mechanism was in an ''in gear'' position the plaintiff is presumed to have known that said pulley shaft was not guarded and that it would revolve when the engine was running. The same instruction was given to the jury in instruction No. IV requested by the defendant which clearly submitted to the jury the issue requested in instruction No. K, therefore, we find that it was not error to refuse to duplicate instructions already given. The cases cited by defendant under this assignment of error properly declare the law as stated in the instruction.

Assignment of error No. XIII complains of the refusal to give instruction No. S requested by defendant. We make the same ruling as made in instruction No. XII. The instructions fully cover the matters requested in this instruction and this instruction would be a duplication.

Error No. XIV, defendant complains that the trial court erred in the giving of instruction No. I for plaintiff as amended by the court.

There are a number of objections to this instruction. The first objection is that the jury were authorized to find for plaintiff if he had no knowledge of the fact that the cover and housing were off the pulley shaft and did not inform the jury that plaintiff was charged with having known such fact if by the exercise of reasonable care he could have known.

We submit that instruction No. I is very confusing. It jumbles together a mass of facts under the different allegations of negligence and requires careful reading to determine what issues are presented. The instruction does tell the jury that they can only find for plaintiff provided plaintiff had no knowledge of the fact that the pulley shaft was unguarded. If, under instructions III and IV, given

by the court, the dangerous conditions of the tractor were obvious or patent, then plaintiff is charged with knowledge. Therefore, actually the instruction, when read in the light of all of the instructions, properly declares the law.

The second objection to this instruction is that the jury could return a verdict for plaintiff if defendant failed to warn him that the tractor was in an ''in gear'' position and by inference inform the jury that plaintiff had a right to assume the tractor was not in an ''in gear'' position. Certainly, under the authorities cited, plaintiff was not warranted in assuming that the tractor was not in an ''in gear'' position. However, under the facts in this case, defendant testified that he left the tractor in an ''in gear'' position and that he knew the pulley shaft was unguarded. We think the instruction is not erroneous under the facts in the case.

The third objection to this instruction is without merit because the question raised is not within the issues of the case.

The fourth objection, likewise, has no merit. Plaintiff's testimony is positive that he had never been warned by the defendant of the unguarded condition of the shaft.

The fifth objection complains of conflict between instruction No. I and instructions No. III and IV given by the court. We find the instructions are not in conflict.

The sixth objection to instruction No. I is that it is not clear and concise. We think this objection is well taken. To say the least, it is certainly confusing. The instruction is very long, consisting of four typewritten pages. It submits the issues in the conjunctive. It requires careful reading to understand whether or not the issues relied upon in the petition are properly presented. Probably the plaintiff wisely chose to submit the issues under the pleadings in the conjunctive because of the doubt as to whether or not some of the grounds of negligence stated a cause of action. The fact that the instruction tries to hypothecate a number of issues upon facts makes it difficult to understand. To say the least, this instruction is very loosely drawn and, we think, so confusing as to constitute error.

Error No. XV' complains of the modification of instruction No. IV as given by the court by inserting the word ''immediately'' in the second line thereof because the insertion of said word required defendant to warn plaintiff immediately before the accident of the unguarded condition of the pulley.

Since this case must be re-tried, we agree with defendant that the word ''immediately'' should not be used. To say the least, it is confusing as to whether or not defendant should have warned plaintiff at the time he ordered him to start the motor or whether it might refer to the warning of plaintiff as to the unguarded condition of the pulley some days before.

Allegation of error No. XVI complains of the correctness of instruction No. VII given.

In Walls v. Thompson, supra, on page 48, this court stated the law: " 'An employee assumes those risks which are ordinarily incident to the discharge of his duty in any particular employment, and also those not ordinarily so incident, but of which he has actual or constructive knowledge, with full appreciation of the danger that may flow therefrom. * * *' "

Instruction No. VII properly states the law so far as it goes. An employee never assumes risks which arise out of the negligence of the employer but this instruction should have told the jury that that is true provided plaintiff did not have knowledge of the conditions arising out of the negligence of the employee. We think instruction No. VII is erroneous for that reason. Shey v. Central Coal & Coke Co., supra; Walls v. Thompson, supra.

We think when the cause is re-tried the instruction should be drawn so as not to be in conflict with other instructions given in the case.

Allegation of error No. XVII complains that instruction No. X is erroneous in permitting damages for future physical pain and suffering because not in response to the pleadings.

An examination of the petition shows that permanent injuries were pleaded. We have examined Ziervogel v. Royal Packing Co., Mo. App., 225 S. W. 2d 798, in which the court points out that section 52 of the new Civil Code expressly requires that special damages be specifically pleaded. In this case the court states the law on page 802 as follows:

It has been held by our Supreme Court that a specific personal injury which is not the necessary or inevitable result of an injury alleged in the petition constitutes an element of 'special damage' which must be specifically pleaded before evidence thereof is admissible. * * *"

This case cites a number of other cases so holding. We find, under the allegations in the petition and under the evidence, that future pain and suffering would inevitably result from the injuries sustained; that permanent injury was pleaded and that there is no merit in this contention. The facts in the cases cited by defendant are not similar to the facts in the case at bar.

Error No. XVIII, being the last allegation of error relied upon by defendant, complains of the giving of instruction No. XI. This instruction relates to the various verdicts. If erroneous, the error was harmless.

Judgment is reversed and remanded for re-trial in accordance with this opinion.

*Vandeventer, P. J.*, and *Blair, J.*, concurs.