VIOLA WELCH v. GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.—No. 40373.—210 S. W. (2d) 79.

Division One, March 8, 1948.

Rehearing Denied, April 12, 1948.

704

*Thomas J. Cole, Oliver L. Salter* and *Ragland, Otto, Potter &*
*Embry* for appellant.

706

*Chelsea O. Inman* and *Frank Mattes* for respondent.

[81] VAN OSDOL, C.—Plaintiff-respondent, Viola Welch, recovered judgment for $15,000 for personal injuries sustained while riding in a passenger coach in defendant-appellant's train. Plaintiff, in proving her case, relied on the inference of negligence permitted by the res ipsa loquitur doctrine.

Herein upon appeal defendant-appellant contends, (1) the petition failed to state a claim upon which relief could be granted; (2) the trial court erred in denying defendant's motion for a directed verdict; (3) the trial court erred in denying defendant's [82] request for a declaration of mistrial; (4) the trial court erred in refusing to allow defendant to amend the answer to conform to proof of contributory negligence; (5) the trial court erred in giving plaintiff's Instruction No. 1; and (6) the verdict was excessive.

(1) Plaintiff, in paragraphs I and II of her petition alleged the trusteeship of defendant; his operation of the railroad properties as a common carrier of passengers; and his exclusive control of the train, the track, the roadbed upon which the train operated and of "the overhead baggage rack, and suitcase hereinafter referred to." Paragraphs III and IV of the petition are as follows,

". . . plaintiff was a passenger of the defendant, having paid the required transportation charge therefor, and was on one of the defendant's trains en route from Kansas City, Missouri to Jefferson City, Missouri. While plaintiff was riding in said train, and without any action of interference whatsoever on her part, a suitcase fell from an overhead baggage rack of the coach in which plaintiff was seated, and struck the plaintiff upon the head, causing her to sustain severe and permanent injuries . . .

"The fall of said suitcase, and plaintiff's injuries were directly caused by negligence on the part of the defendant in the maintenance, management, control and operation of the roadbed, track and train in which the plaintiff was riding, and the overhead baggage rack aforesaid."

The defendant did not move to make the petition more definite and certain. Defendant's attack herein upon the sufficiency of the petition is based upon the premise that "the petition was obviously in-

tended to plead a res ipsa loquitur case." Defendant says a plaintiff must *plead* as well as prove the elements necessary to the application of the res ipsa loquitur doctrine. Defendant cites many cases where proof was lacking in showing one or more of the elements generally considered necessary to the application of the doctrine.

(The res ipsa loquitur doctrine can be invoked when "the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation." McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S. W. 872. And, in general, the res ipsa loquitur doctrine does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possessed superior knowledge or means of information as to the cause of the occurrence.. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557; Charlton v. Lovelace, 351 Mo. 364, 173 S. W. 2d 13.)

Defendant urges that, unless the petition is sufficient in stating "a res ipsa loquitur case," no claim is stated because the petition states but conclusions and tenders no issue of fact.

The petition does not allege specific negligence. It alleges the "fall of said suitcase, and plaintiff's injuries" were directly caused by negligence of defendant in the maintenance, management, control and operations of the roadbed, track and train, and the overhead baggage rack. The petition does not state any extraordinary circumstance, for instance, an "unusual and extraordinarily violent sidewise lurch" of the coach, which might indicate some negligent act or omission of defendant in the operation of the train or in the maintenance of rolling equipment or roadbed or tracks caused the suitcase to fall. Since plaintiff must have known that, in proving her case, she was going to rely on evidence of a violent lurch of the coach, we think she should have plainly stated the circumstance. Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S. W. 2d 25. But we believe the petition was sufficient in stating general negligence. The allegation of *negligence* was an allegation of issuable ultimate fact, not a conclusion. Such ultimate fact may be inferred from supporting evidentiary facts. Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. 2d 654.. The doctrine of res ipsa loquitur does not dispense with the necessity that the plaintiff who charges negligence must prove it, but relates to a method of proof by which defendant's [83] negligence may be shown. Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S. W. 2d 240; Belding v. St. Louis Public Service Co., Mo. App., 205 S. W. 2d 866. The sufficiency of the petition to state a claim in negligence so as to support a judgment, at least after verdict, is to be determined independently of any question whether the doctrine applies as an

evidentiary method in proving the claim. Zichler v. St. Louis Public Service Co., supra. And a general allegation of negligence is good unless it is attacked for want of being sufficiently definite. See concurring opinion of White, J., in Kramer v. Kansas City Power & Light Co., 311 Mo. 369, 279 S. W. 43; State ex rel. Hopkins v. Daues, 319 Mo. 733, 6 S. W. 2d 893; Zichler v. St. Louis Public Service Co., supra. The cases of Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001; and Gibbs v. General Motors Corporation, 350 Mo. 431, 166 S. W. 2d 575, cited by defendant, are not authority supporting defendant's contention a plaintiff's petition is insufficient to support a judgment in "a res ipsa loquitur case," where, as here, the petition should be considered sufficient, we believe, in alleging general negligence.

(2) and (5) The insufficiency of the evidence to make out a case was not particularly assigned as a ground for defendant's motion for a directed verdict; however, defendant, in the motion for a new trial, assigned errors in giving plaintiff's instructions based on the grounds stated by defendant's counsel at the time the instructions were offered. At that time defendant contended (and now again upon this appeal contends) error in giving plaintiff's main instruction, No. 1, on the ground (among others) the evidence was insufficient to "make a submissible res ipsa loquitur case."

In the afternoon of November 29, 1943, plaintiff-respondent, then forty-six years of age, a resident of Jefferson City, was a fare-paying passenger of defendant-appellant's train No. 6 en route from Kansas City to Jefferson City. Plaintiff testified, "the train was pretty crowded," and she stood in the aisle about midway of the coach for a little while, and as the train started moving out of Kansas City she sat down on her suitcase in the aisle for maybe thirty minutes; then, being invited by one of two soldiers who were seated in a seat on the left (north) side of the coach, she sat down in the seat occupied by them. She sat next to the aisle, and she and the soldiers continued to ride in the one seat until the train reached a point near Jefferson City. She had placed her own suitcase at her feet, and had not observed the luggage rack above her. She had "kind of dozed off" and, when the train was not much more than ten or fifteen minutes out, she wakened and was wondering if the train was approaching Jefferson City, "I had my purse in my lap, and all of a sudden . . . the train gave a very sudden and violent lurch and threw me just one way and then the other, and about at the same instant the suitcase fell from above and struck me on the head." Almost at the same time another suitcase in front of her fell into the aisle. The lurch threw the "passengers and everything against each other." It knocked her spectacles "off into my lap and knocked my purse onto the floor and my cosmetics all over the floor, and it seemed as if there was a general commotion. It must have knocked somebody down

up in front. I saw some man looking as if he was knocked almost down onto the floor, and different people around me were trying to help me.'' One of the soldiers, who had been seated with plaintiff, told her the suitcase which had struck her belonged to him. He picked it up and put it back on the rack. The suitcase was ''probably about two and a half feet long and a foot deep and maybe a foot and a half wide.'' Before she was struck she had not noticed anyone get up and ''get any luggage down or put any luggage up.'' After she was struck she looked up at the rack and noticed there ''was a lot of luggage piled on the rack, and a lot hanging over, outside of the rack, sticking out.''

The luggage rack ran lengthwise of the coach; it was 18¼ to 18¾ inches in width and sloped about two inches from its outer edge down to where it joined [84] onto the coach wall. A rounded molding raised the outside edge of the rack three fourths of an inch to one and one-fourth inches above the rack's surface.

Defendant's witnesses testified they experienced no jerk or jar or lurch of the train No. 6 such as the lurch described by plaintiff. They testified the rolling equipment was in good condition; there was a good roadbed; no defect, such as a loose joint, in the track; and no such sudden setting or release of brakes as might cause a train to lurch. It was the duty of the trainmen to watch for and to properly replace baggage which passengers had improperly placed on baggage racks, but passengers retained custody of their own baggage. Passengers frequently got their baggage from the racks to ''get what they want, and put it back.''

In the case of Charlton v. Lovelace, supra, cited by defendant, there was an absence of proof of the attendant facts and circumstances of the occurrence resulting in the death of plaintiff's decedent, except the mere overturning of the boat. There was no showing whatsoever of *the physical cause* of the occurrence. There was no evidence introduced tending to show what made the boat turn over. In our case, the mere circumstance the suitcase fell from the overhead rack would be considered insufficient prima facie of defendant's negligence. Such a circumstance, in itself, could not be said to reasonably demonstrate plaintiff's injuries were the result of any negligence for which defendant should be held responsible. The circumstance alone does not reasonably exclude causes for which defendant might not, in any way, be responsible. Defendant was not in exclusive control of the luggage on the rack.

There was evidence, however, tending to show another circumstance—the extraordinarily violent lurch of the coach almost coincident with the falling of the suitcase from the rack. The violent movement of the coach, which coach was in the exclusive control of defendant, could be reasonably considered as the physical cause of the occurrence. A lurch so violent as described by plaintiff does not

ordinarily occur absent some fault of the carrier; and the inference was permissible the violent movement was due to *some* negligent act or omission on the part of the carrier-defendant, a legal cause—through a direct sequence of causation—of the violent lurch, of the fall of the suitcase and of plaintiff's injury.

In the case of Prunty v. Allred, 73 Cal. App. 2d 67, 165 P. 2d 935, we see the res ipsa loquitur doctrine is held applicable where defendant is in the exclusive control of the instrumentality *which causes an injury*. We "do not forget that a defendant is sometimes held bound by the res ipsa loquitur doctrine, though not in control of all the instrumentalities involved in a casualty" (Kapros v. Pierce Oil Corporation, 324 Mo. 992, 25 S. W. 2d 777), for example, in Belding v. St. Louis Public Service Co., supra, a vehicle other than defendant's bus was involved in the occurrence; and in Zichler v. St. Louis Public Service Co., supra, defendant's streetcar collided with a large truck owned and operated by another. In the Prunty case it was urged (as is urged herein) the doctrine of res ipsa loquitur did not apply because an overnight bag (which had fallen from the luggage rack of defendant's bus) was not in the exclusive control of defendant. There was evidence the overnight bag had fallen from the rack when the bus, having passed another vehicle, was "rather suddenly" coming back into its own lane. Said the court, "In this action the jury may have been justified in believing that it was the negligent operation or movement of the bus, which bus was admittedly under the exclusive control of defendant, that caused the accident and injury by 'rather suddenly coming back into its own lane' and thereby causing the baggage to fall upon plaintiff . . ."

We believe the evidence was sufficient to warrant the submission of plaintiff's case to the jury.

As observed supra, defendant introduced evidence tending to negative any extraordinarily violent lurch, and tending [85] to negative any fault in the roadbed or track or train equipment, or in the operation of the train which might have caused the coach to violently lurch. This evidence tended to rebut plaintiff's testimony and the permissible inference of defendant's negligence based on plaintiff's testimony of the violent movement of the coach; but such evidence did not destroy the permissive probative substantiality of the inference of negligence nor did it affect the submissibility of plaintiff's case. Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S. W. 2d 8.

Plaintiff's given Instruction No. 1 hypothesized an "unusual and extraordinarily violent sidewise lurch" of the coach; "that a suitcase was thereby directly caused to fall from an overhead baggage rack and strike the plaintiff on the head and injure her"; and the instruction continued in language identical with that of the form of instruction suggested in the case of Harke v. Haase, supra,

335 Mo. at page 1111, 75 S. W. 2d at page 1004. Defendant contends the instruction is erroneous in telling the jury the facts so hypothesized, if found to be true, "are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent." The instruction, defendant urges, erroneously injects a type of circumstantial evidence not inherent in a res ipsa loquitur case; and erroneously injects a fact inference into the instruction. We must try to remember the court in the Harke case, in suggesting the phraseology of a proper instruction in a res ipsa loquitur case, was intentionally avoiding any attempt to instruct as to technical rules of law. The court was suggesting the use of clear, simple, plain language advising *a jury* the issue of fact, "some negligence" of defendant, in the instruction submitted, "may be proven circumstantially"; and the phraseology of the suggested instruction has had the further and continued approval of judicial decision. Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. 2d 797. See also Harding v. Kansas City Public Service Co., Mo. App., 188 S. W. 2d 60; Jones v. Kansas City Public Service Co., 236 Mo. App. 794, 155 S. W. 2d 775; Vesper v. Ashton, 233 Mo. App. 204, 118 S. W. 2d 84; Thompson v. Kansas City Public Service Co., 232 Mo. App. 1124, 114 S. W. 2d 145.

A contention is made that the instruction is erroneous in failing to require the finding the "allegedly injuring instrumentality" was under the control of defendant. Now the instruction hypothesizes the lurch of the coach in the train as the direct cause of plaintiff's injury, and defendant's answer admitted the plaintiff's allegations that defendant and plaintiff bore a carrier-passenger relation and that defendant was in exclusive control of the train.

Defendant further says the testimony of the violent movement of the coach was evidence of specific negligence and, consequently, the res ipsa loquitur submission was erroneous; and, it is said, considered as an instruction submitting specific negligence the instruction is erroneous in commenting on the evidence, in invading the province of the jury, in assuming negligence had been proved, in suggesting a line of reasoning to the jury, and in being argumentative. The circumstance of the "unusual and extraordinarily violent sidewise lurch," as we see it, may be reasonably inferred to have been a circumstance, a result, due to "some negligence," the proximate cause of plaintiff's injury, of which negligence the circumstance itself and the fact of the carrier-defendant's exclusive control of the train afford bases. The extraordinarily violent lurch "speaks" of *some kind* of negligence, but does not "spell out" *the* specific fault. Belding v. St Louis Public Service Co., supra. And compare Jones v. Thompson, 353 Mo. 730, 184 S. W. 2d 407; La Vigne v. St. Louis Public Service Co., Mo. Sup., 181 S. W. 2d 541; Jones v. Kansas City Public Service Co., supra.

And defendant further contends the clause "unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to defendant's negligence" erroneously imposes [86] the burden of disproving negligence on defendant. The instruction is not subject to this criticism when read as a whole (Thompson v. Kansas City Public Service Co., supra); moreover, the jury were told by Instruction No. 2 that the burden of proof of negligence was on plaintiff, and so abided throughout the case.

(3) Plaintiff, being examined as a witness, was asked if she had ever had a surgical operation. She answered that she "had no surgical operation. I think what they have found . . . is when I must have had several stitches when one of my six children were born . . ." Of course, testimony of the number of a plaintiff's children (or the fact a plaintiff has children) is usually irrelevant, and the admission of such testimony has been disapproved by this court. Stephens v. Hannibal & St. J. R. Co., 96 Mo. 207, 9 S. W. 589; Dayharsh v. Hannibal & St. J. R. Co., 103 Mo. 570, 15 S. W. 554; Salmons v. St. Joseph & G. I. R. Co., 271 Mo. 395, 197 S. W. 35. Ordinarily the only purpose such evidence could have would be to play upon the sympathy of the jury and thus enhance the amount of the jury's award. But see Kingsley v. Kansas City, 166 Mo. App. 544, 148 S. W. 170, where such testimony was said to have a direct bearing on a contested issue, and the admission of the testimony was held proper. In the instant case, the trial court did not "take the position it was deliberately done"; and the trial court invited defendant's counsel to object, promptly ordered the objectionable part of the answer to be stricken from the record, and directed the jury to disregard it. We believe the trial court did not err in refusing defendant's further request for a declaration of a mistrial. We should assume the jurors considered only legal evidence, and were not unmindful of their duty to obey the trial court's direction. We see no exceptional circumstances which would place the objectionable part of the answer without the rule that, ordinarily, the withdrawal and exclusion of erroneously admitted evidence leaves no ground for reversing the judgment on account of such admission. Salmons v. St. Joseph & G. I. R. Co., supra; Stephens v. Hannibal & St. J. R. Co., supra.

(4) At the conclusion of the evidence when the trial judge was examining the instructions proffered by the parties, defendant asked leave to amend the answer in accordance with the proof that plaintiff sat down in the seat without having observed the baggage rack above her or the baggage thereon. The Civil Code of Missouri contemplates liberal amendments to the end of a trial on the merits of the real issues of a cause. Gerber v. Schutte Inv. Co., supra. And it is provided that when issues, although not raised by the pleadings, are tried by express or implied consent of the parties, the

issues shall be treated in all respects as if they had been raised by the pleadings. Section 82, Civil Code of Missouri, Laws of Missourn, 1943, p. 378, sec. 847.82 Mo. R. S. A. However, we believe the trial court should not be held to have erred in refusing to permit the amendment. In the circumstances, we believe, the evidence plaintiff did not look did not justify the submission of the issue of contributory negligence. There is no evidence that, had plaintiff looked, she would have seen a bag so improperly placed on the rack as to constitute an apparent hazard to her in the ordinary movement of defendant's train; and plaintiff, in the exercise of due care for her own safety, was not obliged to anticipate and take precautions to protect herself from the hazard of falling luggage due to some negligence (unknown to her) of defendant-carrier resulting in an extraordinarily violent movement of the train.

(6) Of the defendant's contention of excessiveness of the amount of the award—the defendant did not raise the contention by assignment in the motion for a new trial. The contention not having been assigned in the motion for a new trial, the question of the excessiveness of the award is not before us. Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304. There was an assignment in the motion for a new trial [87] (which assignment is not now made herein) that the amount of the award "is so excessive as to show the bias, prejudice and passion of the jury." This assignment presented the question to the trial court whether the amount of the award was so much against the weight of the evidence as to show bias and prejudice on the part of the jury. Such an assignment is vitally different from that of excessiveness of the amount of an award. Stokes v. Wabash R. Co., supra. See also Sofian v. Douglas, 324 Mo. 258, 23 S. W. 2d 126; and Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. 2d 157. Nevertheless, having a regard for the spirit of Supreme Court Rule Number 3.27, we have examined the evidence relevant to the issue of the nature and extent of plaintiff's injuries.

When considered from the standpoint most favorable to plaintiff, the evidence shows plaintiff sustained a severe injury to the cervical spine. There was compression of the bodies of the first and second cervical vertebrae. The first four cervical vertebrae were thrust forward and rest forward of the shaft of the spine below; some of the intervertebral spaces are widened, some narrowed. The entire cervical spine is unduly straight. She wears a neck brace or "collar" part of the time. She should wear the neck brace to prevent her head from "slumping forward," unless and until a successful operation in spinal fusion is performed. Her brace is uncomfortable and makes her very nervous. Her injuries were, are, and will continue to be painful. Her injuries are permanent. Before her injury, she earned about $75 per month, in pay and tips, as a waitress; and she received additional income from her rooming house. She had always

been a waitress. Her injuries have incapacitated her from service as a waitress; and her income from her rooming house has been materially reduced. At the time of trial her loss of earnings as a waitress, $75 per month since her injury, amounted to about $2700; and she then had a life expectancy of 21.63 years. Considering the nature of her injuries, her pain, her loss of earnings past and future, we cannot surely say the amount of the jury's award was excessive.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.