Walter PENDER and Fay M. Pender, Respondents,

v.

Kenneth E. FOESTE, Appellant.

No. 47250.

Supreme Court of Missouri,

Division No. 1.

Nov. 9, 1959.

Motions for Rehearing or to Transfer to Court en Banc Denied Dec. 14, 1959.

Limbaugh & Limbaugh, Joseph J. Russell, Cape Girardeau, for appellant.

Strom & Strom, Elmer A. Strom, Stephen E. Strom, Cape Girardeau, for respondents.

COIL, Commissioner.

In their action against Kenneth Foeste and William Jones, Walter Pender and his wife Fay each claimed damages for alleged personal injuries and Walter also sought to recover medical, hospital, and other expenses incurred, and damages for the loss of services and companionship of his wife, and for injury to his truck. Foeste counterclaimed and sought $20,000 for alleged injuries to his person and property. The trial court directed a verdict for William Jones. A jury awarded Walter $4,000, Fay $6,000, and found against Foeste on his counterclaim. Foeste has appealed from the judgment entered on the verdicts awarding Walter and Fay damages. We shall sometimes refer to respondents Walter and Fay Pender as plaintiffs and to appellant Foeste as defendant.

Defendant contends that Walter Pender was guilty of contributory negligence as a matter of law. We state the evidence from a standpoint favorable to plaintiffs. On November 2, 1957, about three o'clock in the afternoon of a clear dry day, plaintiffs (Walter driving and Fay his frontseat passenger) were proceeding north on highway V (Bend Road) in Walter's truck. Highway V was a concrete road 20 feet wide with a 9-foot shoulder on the west. From a point on the road at the place where a driveway extends west, the highway descends gradually to the north and curves to the right. When plaintiffs reached a point about 15 feet south of the south edge of the driveway (about 1½ miles north of Cape Girardeau) which led to the trailer in which they lived, Walter drove his truck so that its left side was adjacent to the center of the highway, slowed to 10 miles per hour, and looked north and saw that no traffic was approaching. At that point he could see a vehicle if it was within the 265 feet immediately north of a point even with the center of the driveway. Walter turned left at 10 miles per hour by angling across the west side of the highway to the middle of the drive and swinging left into the drive. When the front of his truck had reached a place in the driveway 21 feet west of the west edge of the pavement and the rear of the truck was 3 or 4 feet west of the west edge, defendant drove the front of his automobile against the right door of plaintiffs' truck, knocked it 20 feet in the air and to a place 30 feet south of the impact point where it came to rest 20 feet west of the west edge of the slab on its left side facing north, with the front of defendant's car against the truck and facing west.

Defendant had approached from the north around the curve and toward plaintiffs' truck at a speed of 75 miles per hour. The speed limit on that highway under maximum favorable conditions was 65 miles per hour. There were skid marks made by defendant's tires which ended at a point about the middle of the driveway and extended back northeastwardly onto and on the highway for a total distance of 150 feet. The skid marks left the pavement at the point where curve ended (at its south end) and the highway continued south (i. e., the skid marks were a continuation of the curve). There was no other traffic in the west lane at any time except plaintiffs' truck and defendant's automobile during the time of the occurrence in question, save and except the automobile operated by former defendant William Jones, who was driving a short distance behind defendant Foeste.

■ Defendant's contention that Walter Pender was contributorily negligent as a matter of law is based upon the premise that Walter was bound by the testimony of his former codefendant, William Jones, who was called as a plaintiffs' witness. Jones testified that Foeste's approaching

automobile was visible to Pender prior to and at the time he began his left turn. It is abundantly clear, however, that Walter was not bound by the testimony of Jones. Plaintiffs adduced other evidence from which the jury reasonably could have found the fact as to visibility contrary to that testimony. Plaintiffs both testified that at the time Walter began his left turn, they looked and no traffic was approaching from the north. Defendant says, however, that Jones' testimony that the car was visible when plaintiffs began their left turn is the only testimony supported by the physical facts involved and that Walter's own testimony as to the distance one could see northwardly from a point 15 feet south of the drive demonstrates that defendant's car was visible at the time Walter began to turn left. It is true that Walter estimated that he could see northwardly more than 300 feet from the place he began his turn. The highway patrolman who investigated the scene of the accident and made specific observations as to distances, estimated that one could see northwardly on the highway from the point where plaintiffs began their turn for a distance of 265 feet. Pender was not bound by his exact estimate as to distance and was entitled to the benefit of the patrolman's estimate. Montgomery v. Petrus, Mo.App., 307 S.W.2d 24, 27 [3, 4]. Pender testified that he made the turn at 10 miles per hour. He traveled about 18 feet diagonally across the west side of the highway and 21 feet west from the highway, or a total of 39 feet to the collision point. At ten miles per hour it took about 2.66 seconds to travel that distance. At the time plaintiffs began the turn, defendant would have been about 2.66 seconds away traveling at 75 miles per hour and thus about 292 feet north of the collision point when plaintiffs began their left turn.

■■ Inasmuch as it appears that there was evidence from which a jury reasonably could have found that no visible traffic was approaching when Walter began

to turn left, and inasmuch as there was no dispute about the fact that the collision occurred when plaintiff's truck had completely crossed the highway and was in the driveway, it is clear that the trial court did not err in refusing to declare as a matter of law that Walter Pender was negligent or that his negligence, if any, was a proximate cause of the collision. The question of a plaintiff's contributory negligence is always for the jury "unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury." Kickham v. Carter, Mo., 314 S.W. 2d 902, 908 [8].

Defendant's answer averred that Walter was contributorily negligent but did not so charge as to Fay. At the end of plaintiffs' evidence, defendant asked leave to amend his answer by inserting an allegation of Fay's contributory negligence. The court denied the request and defendant says the trial court thereby erred.

■ Courts should be liberal in permitting amendments to pleadings, Section 509.490 RSMo 1949, V.A.M.S., but whether a particular amendment "should be permitted is primarily within the sound judicial discretion of the trial judge, whose action will not be disturbed where * * * there is no showing that such discretion has been palpably and obviously abused." Stewart v. Stewart, Mo.App., 277 S.W.2d 322, 326.

■ In any event, the question whether Walter Pender was contributorily negligent in failing to keep a proper lookout was submitted and the jury found that he was not proximately negligent. The contributory negligence sought to be charged by amendment against Fay, the passenger, was her failure to keep a proper lookout and to warn. It seems apparent, under the evidence in this case, that the jury's finding against defendant on the issue of Walter's

contributory negligence was tantamount to a finding against any contention defendant sought to make that Fay was contributorily negligent. Consequently, no prejudice could have resulted to defendant on account of the trial court's refusal to permit the amendment.

Defendant contends the trial court erred in giving plaintiffs' verdict-directing instructions 4 and 6. Those instructions submitted disjunctively defendant's primary negligence in driving at a speed which endangered the lives, limbs, and property of others; in driving at a speed in excess of 65 miles per hour; in failing to keep his automobile under control so as to guide, slacken, or stop in time to avoid a collision; in failing to keep a proper lookout. Defendant says the instruction failed to hypothesize sufficient facts as to speed, erroneously told the jury that a speed in excess of 65 miles per hour was negligent as a matter of law, and that there was no substantial evidence either that defendant failed to keep a proper lookout or, if so, that it contributed to cause the collision.

The instructions, in so far as here pertinent, were the same. They hypothesized that at the time in question Walter Pender, with his wife as a passenger, was driving north on the right side of highway V in his truck, that when they reached a certain point described in the instruction Pender intended to and did turn left and at that time the highway to the north was clear of approaching traffic, that at that time defendant was operating a motor vehicle southwardly on the highway from around a curve, and that he was then driving and drove "at a rate of speed which endangered the property or the lives and limbs of other persons, * * * and * * * [he] thereby failed to exercise the highest degree of care in the operation of his automobile, and that as a direct and proximate result thereof" the collision occurred and injuries were caused as a direct result, etc. (Bracketed insert ours.)

Defendant argues that sufficient facts were not hypothesized to furnish a guide to the jury in determining what "facts and circumstances * * * would make speed on the part of the defendant negligence." Defendant in support of his contention has cited these cases: Yates v. Manchester, 358, Mo. 894, 217 S.W.2d 541; Cantwell v. Zook, Mo., 250 S.W.2d 980; Green v. Guynes, Mo., 235 S.W.2d 298; and Dahlen v. Wright, Mo., 235 S.W.2d 366. Those deal with instructions which hypothesized "excessive speed under the circumstances" or "high, excessive, and dangerous speed under the circumstances." Defendant's instant argument proceeds as though the hypothesis in the present instruction was the same as that in the cited cases, i. e., "excessive speed under the circumstances." But the hypothesis in the instant instruction is different from that dealt with in the cited cases and the asserted reasons for the erroneousness of the instructions in those cases do not apply to the submission in the present instruction.

■ Here the instruction hypothesized a specific act, viz., that defendant drove at a speed which *endangered* life and property, and it seems to us that the present question is whether the jury would understand that the hypothesis, "that at said time and place defendant Kenneth E. Foeste drove his automobile at a rate of speed which endangered the property or the lives and limbs of other persons," submitted the question whether defendant's speed, whatever it was in miles per hour, was such that because of it he could not stay on the highway at the end of the curve and as a result went off the highway and thereby endangered the property, lives, and limbs of plaintiffs. We think the fact that the jury would so understand is made plain when the evidence pertaining to the speed question is considered. Defendant remembered nothing whatever of the accident and consequently gave no account of what happened. His former codefendant, plaintiffs' witness Jones, testified that he was following defendant and that as Foeste rounded the curve and drove toward the collision point he might have been going as fast

as 65 miles per hour and that he (the witness) might have said at one time that Foeste *slowed* to 65 miles per hour; that Foeste's automobile "slid off the road" but witness did not know at just what point, except that when the automobile "slid off" it went to the west shoulder and was skidding. As heretofore noted, there was other evidence that defendant's speed was 75 miles per hour. The only matters pertaining to speed possibly in dispute were defendant's exact speed and whether and where and to what extent he slowed his his automobile prior to the collision, or, stated differently, whether his *speed* caused his automobile to leave the highway. As noted, there was no dispute about the facts that the collision occurred when plaintiffs' truck was completely off the highway and that the west half of the highway was clear at the time of and prior to the collision. Under that evidence we think the jury must have understood that the question posed by the instant hypothesis was whether it was defendant's speed (whatever it was) which caused him to leave the highway and hit the truck.

■ Defendant contends instructions 4 and 6 erroneously told the jury that "if you find that at said time and place defendant Kenneth E. Foeste drove his automobile in excess of sixty-five miles per hour, * * * [and he] thereby failed to exercise the highest degree of care in the operation of his automobile, * * *." (Bracketed insert ours.) Defendant asserts that the court thereby told the jury that a speed in excess of 65 miles per hour was negligent as a matter of law, when it was plaintiffs' burden to prove that such speed was negligent and that facts and circumstances under which it could have been negligent should have been adduced and hypothesized.

Assuming, contrary to its plain language quoted above, that the instruction does, as defendant asserts, tell the jury that defendant was negligent if he traveled at a speed in excess of 65 miles per hour, the direction was proper. Section 304.010 RSMo 1949, V.A.M.S. provides in part that

no vehicle shall be operated in excess of 65 miles per hour during the daytime on highways such as state highway V in question. Defendant points out that the section also provides, in effect, that nothing in it shall be construed to relieve the one asserting speed in excess of the maximum prescribed from proving that such speed was a proximate cause of the injury claimed. That provision has no application to any present question and clearly defendant's violation of the statutory 65-miles-per-hour speed limit constituted negligence. And it was proper for the instruction to so tell the jury, where, as here, there were no circumstances in evidence tending to show a legal excuse for defendant's failure to have observed the speed limit at the time and place in question. Wilson v. Shumate, Mo., 296 S.W.2d 72, 75 [2–5].

■ Defendant says instructions 4 and 6 were erroneous because they submitted his failure to properly look out when there was no evidence that he failed to keep a lookout or that, if so, the failure contributed to cause the collision. It seems apparent, however, that the jury reasonably could have found from the evidence heretofore stated that had defendant maintained a proper lookout he would have seen Walter's truck crossing the west side of the highway in ample time to have slackened his speed sufficiently to have avoided leaving the highway and striking plaintiffs' truck. Inasmuch as defendant failed to so do, the jury reasonably could have found that he did not see the truck when it first became visible and when in the exercise of the highest degree of care he should have seen it and thus that he did not maintain a proper lookout. Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918; Chapman v. Terminal R. R. Ass'n of St. Louis, Mo.App., 137 S.W.2d 612, 618 [12].

■ Defendant also contends that instruction 4 is erroneous for the reason that it attempted to combine humanitarian and primary negligence. The portion of the in-

struction attacked is this: " * * * if you find that the said Kenneth E. Foeste failed to keep his automobile under control at a time and place when he knew or by the exercise of the highest degree of care should have known that the said pickup truck was turning left on said highway into said driveway, if you so find, so as to guide his automobile, stop or slacken the speed thereof to thereafter avoid a collision upon the first sign of danger, if you so find, and if you find that Kenneth E. Foeste in any or all of said respects, if any, failed so to do, then he was negligent * * *." As we understand defendant's argument, it is: Because the foregoing portion of the instruction contains some language that is often found in humanitarian instructions and because the foregoing portion of the instruction does not include all the elements of a proper humanitarian submission, the instruction is erroneous for the reason that it improperly combines primary and humanitarian negligence. The short but, we think, complete answer is that instruction 4 was a primary negligence instruction and was not erroneous simply because it may have hypothesized primary negligence in language that might also be appropriate in an instruction submitting humanitarian negligence. This is not a case in which a plaintiff, submitting his case on the humanitarian theory, failed to include all the necessary elements or injected defendant's antecedent or other primary negligence. Here there was no question at the trial and there should be no question here that plaintiffs' instruction 4 submitted primary negligence only and that plaintiffs did not submit humanitarian negligence in any instruction. Defendant was not, because of the instruction, precluded from asserting his contributory negligence defense.

Defendant contends the trial court erred in refusing to declare a mistrial under these circumstances. Plaintiffs' highway patrolman witness was permitted, over defendant's objection, to state, based upon his observation of the curve in question and his experience as a motor vehicle operator, that the maximum safe speed at which that curve could be negotiated was 45 miles per hour. Later (the following day), the trial court instructed the jury to disregard that testimony and denied defendant's subsequent request that the jury be discharged.

Ordinarily the withdrawal and exclusion of erroneously admitted evidence leaves no ground for reversing the judgment on account of such admission because it is, in the absence of exceptional circumstances, to be assumed that the jury obeyed the trial court's direction and considered only legal evidence. Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79, 86 [15–18].

Assuming, without deciding, that the trial court erred in admitting the patrolman's opinion over the sole objection that it was *not a proper subject for expert testimony*, we are of the view that the trial court did not abuse its discretion in refusing to discharge the jury. We concede that a highway patrolman's testimony that a certain curve could not be safely negotiated above a certain speed would probably be impressive evidence. But the trial court directed the jury to disregard the patrolman's opinion and the trial judge considered the matter prior to overruling defendant's new trial motion and thereby expressed the view that his action in directing the jury to disregard had effectively corrected the erroneous admission of the evidence.

Defendant contends that plaintiffs' damage instructions 8 and 9 erroneously authorized the assessment of damages for permanent injuries, for loss of future earnings, and for future pain and suffering because, says defendant, there was no substantial evidence to support the submission of those items. We think defendant's contention that the damage instructions were erroneous must be sustained in so far as the instructions authorized the jury to take into account in determining the damages it would allow Walter and Fay respectively: "Such distinct permanent injuries, if any,

you find from the evidence he has suffered by reason and on account of injuries, if any, suffered in said collision, * * *."

Plaintiffs' doctor testified that Walter Pender's most prominent injury was a fracture of the spinous process of each the fifth and sixth cervical vertebra. He said, however, that there had been good healing and good alignment, and that Walter should have complete recovery; that if Walter had pain or muscle spasm at trial time he would have to live with that for a time but that his injuries would not affect him any in the future; that he thought Walter was going to get "all right."

Walter Pender testified that he was a carpenter, that to trial time when he engaged in work which required him to look up for any length of time, as he said was often the case, his neck would be painful and he would have to rest for a period of time before he could again return to that work. He said that condition was no better since the accident.

Mrs. Pender's injuries consisted of fractures of eleven ribs, a fracture of the pelvis (a fracture of the ramus of the pubis on the right side), lacerations of the scalp, and a puncture wound on the right thigh. Plaintiffs' doctor testified that there would be no permanent weakness in the healed ribs, that he could not tell about the future with respect to the pelvis, and while the puncture wound in the thigh might cause plaintiff to be unable to do the same amount of work as before in some mild degree, he did not state how long such disability would continue. He said further that Mrs. Pender had made a complete recovery, would have no future difficulty as a result of the accident, and would be able to perform the duties of her occupation just as well as before.

Mrs. Pender testified that she had a scar in the nature of a dent in her left leg, that prior to the accident she had worked as a mangle operator in a hotel laundry and since the accident had returned to work as a maid in the same hotel, that at trial time she would work for two hours and then need to rest ten or fifteen minutes because of pain at the site of the wound in her leg, and that she then would be able to work another two hours, etc. She said that she was unable to carry on her work as she did before because she tired easily, her leg hurt and she had pain in her right side when she moved heavy objects.

We note that Walter Pender's verdict was for $4,000 and, if the jury found his special damages in the amount shown by the evidence, $2,679 of the total was awarded for special damages and thus only $1,321 to compensate for Walter's injuries and for the loss of the society of his wife; and we note also that Mrs. Pender's verdict was for $6,000 and that there is no claim it was excessive. It is true, however, that we are unable to determine how much, if any, of either of the verdicts was awarded on account of the submission permitting the jury to take into account the plaintiffs' distinct permanent injuries, if any. While under the circumstances stated above, we agree that any slight evidence of distinct permanent injuries would be sufficient to cause us to hold that the submissions in these cases were justified, we find no such evidence. The only medical testimony was that there were no permanent injuries. The injuries to neither Mr. or Mrs. Pender were of such a nature as to make their permanency, if any, apparent to laymen. The testimony of neither Mr. or Mrs. Pender would justify the inference that the injuries sustained by either of them, although sufficient to submit future pain and suffering and future loss of earnings, were, despite the contrary medical testimony, distinct permanent injuries. We are constrained to the view that the trial court erred in giving instructions 8 and 9. State ex rel. Kansas City Public Service Co. v. Shain, 350 Mo. 316, 165 S.W.2d 428, 430, 431; Heibel v. Robison, Mo.App., 316 S.W. 2d 238, 241 [3, 4]; Hoffman v. Illinois Terminal R. Co., Mo.App., 274 S.W.2d 591, 593 [1–4].

Plaintiffs requested in their brief, in the event the damage instructions were erroneous, that any new trial be on the issue of damages only. Although defendant filed a reply brief, he made no attempt therein to demonstrate that the issues of damages and liability might not fairly be tried separately and our review of the case has disclosed nothing which would indicate that it would be unfair to try the issue of damages independent of the question of defendant's liability.

It follows that the portion of the judgment entered on the verdicts as to liability is affirmed, the portion thereof as to damages is reversed, and the case is remanded for a new trial on the issue of plaintiffs' damages only.

HOLMAN and HOUSER, C., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.