Osie **FAIRLEY**, (Plaintiff) Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, (Defendant) Appellant.
No. 30704.

St. Louis Court of Appeals.
Missouri.
Dec. 19, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 22, 1962.

Donald L. Schmidt, St. Louis, for appellant.

Samuel A. Goldblatt and William L. Mason, Jr., St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action by Osie Fairley, as plaintiff, against the defendant, St. Louis Public Service Company, to recover damages for personal injuries alleged to have been sustained by plaintiff on July 6, 1958, while a passenger on a bus owned and operated by defendant. The trial below resulted in a verdict and judgment for plaintiff in the sum of $2,000.00. From the judgment defendant has appealed.

· The case was pleaded and submitted on the theory of res ipsa loquitur, the petition alleging that when the bus was at or near the intersection of Waterman Avenue and Union Boulevard plaintiff arose from her seat in the bus in order to alight therefrom, and that while so doing, due to the carelessness and negligence of the defendant, she was caused to violently and suddenly come into contact with the seat of the bus and caused to sustain serious, painful and permanent injuries.

On this appeal defendant contends that the court erred, (1) in failing to sustain its motion for a directed verdict for the reason that plaintiff failed to make a case under the res ipsa loquitur doctrine, or show that any act or failure to act on the part of the defendant was the proximate cause of plaintiff's injury; (2) in giving and reading to the jury instruction No. 1 for the reason that the evidence was not sufficient to establish a factual situation which would authorize an inference of negligence under the res ipsa loquitur doctrine; and (3) in giving instruction No. 8, a measure-of-damages instruction, for the reason that it authorized recovery for future medical expense and loss of future wages when there was no substantial evidence to support said submission.

Just prior to her alleged accident plaintiff was a passenger on defendant's bus, which was southbound on Union Boulevard, in the City of St. Louis. She was seated next to the window in the third seat in back of the rear exit door on the right side of the bus. Another passenger, Joseph Reed, sat next to the aisle in the same seat. When the bus reached the intersection of Union Boulevard and Waterman Avenue,

plaintiff, intending to alight from the bus, pulled the cord which operated the buzzer signal. As she did this Mr. Reed stepped into the aisle and plaintiff slid over in the seat toward the aisle. She then arose and moved toward the aisle, and as she did so felt a stinging sensation in her left leg. After she reached the aisle she discovered that her left leg was bleeding at a point in the calf of her leg about 4 inches below the knee. Plaintiff testified that there were no unusual movements of the bus as it crossed Waterman Avenue; that it was traveling at a normal rate of speed; and that as she moved over toward the aisle, the seat did not move or "jiggle" about in any manner.

The testimony of Mrs. Ruby Thompson given in a deposition taken prior to the trial was read into evidence by plaintiff. Mrs. Thompson was a passenger on the bus at the time plaintiff sustained her alleged injury. She sat in the seat immediately in front of the one in which plaintiff was seated. After plaintiff emerged from her seat Mrs. Thompson saw that plaintiff's leg was bleeding. She tied a handkerchief around plaintiff's leg, and when the bus reached the end of the line, made an inspection of the seat in which plaintiff sat. She observed a metal object protruding from the seat. It was underneath the seat and appeared to be a support on which the seat cushion rested, and ran from the front to the back of the seat. She stated it "seemed to be cut and left little jagged ends on this piece of iron. * * * it seemed to be an inch or a little better than an inch wide, and, oh, it wasn't a half inch thick." She stated she was able to see this metal protruding with her naked eye; that the piece of metal on the left side of the seat was protruding more than the one on the right side; that it was a flat piece of metal which had been cut and had a jagged end.

Plaintiff was taken to the Homer G. Phillips Hospital where she was treated by Dr. Marion E. Jones. Dr. Jones was called as a witness for the defendant. He testified that his examination showed a superficial dilatation of the veins in the left leg. He also stated that he had great difficulty in locating the site of the trauma to the leg because there was a small blood clot in the involved area; that there was a small segment of dilatated vein with a small cut in it; that the rupture was about 8 centimeters or about 5 inches below the knee. The diagnosis made at the time was ruptured varicose vein of unknown etiology. The doctor stated that a ruptured varicose vein is one that has a tear in it which permits bleeding. Plaintiff's leg was cleaned with an antiseptic solution and wrapped with an ace bandage to prevent further hemorrhaging.

Plaintiff was also treated by Dr. Vaughn Payne on July 6, 1958. Dr. Payne testified for plaintiff. He stated that her complaint on that day was bleeding from her leg and swelling of the upper left leg; that his examination revealed a bleeding area in the upper lateral aspect of the left leg which came from a large vein; that she had a laceration or puncture wound in the area where the blood was coming from; that it was cut; that you could tell it was cut because it was "kind of jagged"; that some blood had already clotted in the wound; that he did not do a lot of washing out because he was trying to control the hemorrhage at the time; that he cleaned up on the outside and then pulled the wound together with adhesive tape; that he did not want to suture it because it was probably infected and he did not want to sew up any infection in the leg; he dressed it and wrapped the leg with the elastic wrapping she already had on, and then gave her an antitetanus shot. He instructed her to stay off the leg and to elevate it. The doctor treated her on numerous occasions thereafter which, in view of the issues on this appeal, we deem not necessary to detail. The wound eventually healed, leaving a scar about an inch or three quarters of an inch long. Although plaintiff testified that she had never been troubled with varicose veins, there was medical testimony that she did have such condition. However, Dr. Payne

gave it as his opinion that the injury suffered by plaintiff would not have happened without trauma.

■■ The question presented by appellant's first assignment of error is whether the res ipsa loquitur rule is applicable under the foregoing facts. The doctrine applies when (a) the thing which causes the injury is under the management and control of the defendant; (b) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. If we accept plaintiff's version of the accident as being true, as we are bound to do in passing upon the motion to dismiss, we must hold that the evidence meets the above requirements. McClosky v. Koplar, 329 Mo. 527, 46 S.W. 2d 557, 92 A.L.R. 641. Plaintiff suffered an accident due to a defect in the seat. The circumstantial evidence clearly establishes this fact. Plaintiff testified she felt a stinging sensation in her left leg as she proceeded from the seat to the aisle. She discovered that her leg was bleeding after she reached the aisle. Mrs. Thompson found a jagged piece of metal, which was part of the framework of the seat, protruding toward the front part thereof. Plaintiff's doctor found a laceration on plaintiff's leg. A jury could reasonably find that plaintiff's injury resulted from her coming in contact with this defective piece of metal which was a part of the seat. The bus was under the management and control of defendant, thus the first requirement of the rule was shown.

■ As to this plaintiff, defendant was charged with the duty of exercising due care for her safety. Such duty required it to make an inspection of the bus at reasonable intervals with reasonable thoroughness for the discovery of defects therein which would create a realizable danger to persons using said bus. Failure to do this is negligence. Considering the location of the defect in this case and its nature, we feel constrained to hold that an accident

such as plaintiff suffered would not ordinarily occur without a neglect of duty owed by defendant to its passengers, and that defendant possessed superior knowledge or means of information as to the cause of the occurrence in question. We hold that the res ipsa loquitur rule is applicable to the case at bar, and that a jury could reasonably find that defendant was negligent and that said negligence was the proximate cause of plaintiff's injury.

Appellant's next contention is that the court erred in giving and reading to the jury Instruction No. 1, which was a verdict-directing instruction submitting the case upon the res ipsa loquitur doctrine. In support of this contention it is first urged that the evidence was not sufficient to authorize an inference of negligence under that doctrine, and that the cause of plaintiff's injury was a matter of speculation and conjecture. What we have heretofore said in connection with appellant's first point is applicable here. There is no merit to the point made.

■ The next complaint made is that Instruction No. 1 is erroneous because it hypothesized a finding that the piece of metal protruded from its normal position without evidence to support such finding. There is no merit in this contention. It appears that the piece of metal in question was a part of the framework which held the seat cushion in place. It also appears from the evidence that there were metal bars on both sides of the seat. Mrs. Thompson testified that the piece of metal on the left side of the seat protruded more than the one on the right. From this evidence it could be found that the piece of metal in question protruded from its normal position.

■ Appellant's final point is that the Court erred in giving and reading to the jury Instruction No. 8. The instruction was one on the measure of damages and authorized the jury to consider, among other items, the following:

"4. Such sum, if any, as you may find and believe from the evidence

plaintiff will with reasonable certainty in the future expend, or incur liability to expend, for medical treatment as a direct result of her bodily injuries, if any;

\* \* \* \* \* \*

"6. Such loss of wages, if any, as you may find and believe from the evidence plaintiff will with reasonably certainty in the future sustain as the direct result of her bodily injuries, if any;"

It is urged by appellant that there was no evidence to support the above submissions. We think appellant's contention is well taken. While there is evidence that plaintiff suffers from varicose veins, there is no evidence in the record upon which a jury might make a finding that future medical care would be necessary for any condition caused by the ruptured varicose vein which occurred July 6, 1958. There was evidence that the laceration on her left leg healed leaving a small scar, and that in September 1958 plaintiff returned to work. Submission of an item of special damages which is not supported by the evidence is error. Heibel v. Robinson, Mo.App., 316 S.W.2d 238.

Plaintiff testified she lost seven weeks' work as a result of the accident. She further testified that prior to the accident her average weekly earnings were approximately $40.00 per week and that her present wage was $8.00 per day. She does domestic work and is employed by the same people for whom she worked prior to the accident. There was no testimony introduced from which a jury might find that plaintiff would with reasonable certainty in the future suffer a loss of wages by reason of her accident. We hold it was reversible error to submit, as an item of damage, future loss of wages. Kagan v. St. Louis Public Service Co., Mo.App., 334 S.W.2d 379; Knipp v. Mankin, Mo., 336 S.W.2d 371; Stupp v. Fred J. Swaine Mfg. Co., Mo., 229 S.W.2d 681.

Since no error appears except such as relates to the amount of damages, only that issue should be retried. Pender v. Foeste, Mo., 329 S.W.2d 656; Guiley v. Lowe, Mo., 314 S.W.2d 232; Wilson v. Kansas City Public Service Co., 354 Mo. 1032, 193 S.W. 2d 5; Hufft v. Kuhn, Mo., 277 S.W.2d 552; Gulley v. Spinnichia, Mo.App., 341 S.W.2d 301.

The judgment is reversed and the cause is remanded with directions to retry only the issue as to the amount of damages, and to then enter judgment for plaintiff for whatever amount of damages may be determined.

RUDDY, J., and JOHN J. KELLY, Jr., Special Judge, concur.

WOLFE, J., not participating.