Osie FAIRLEY, Plaintiff-Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
A Corporation, Defendant-Appellant.

No. 49369.

Supreme Court of Missouri,

En Banc.

Dec. 11, 1962.

Donald L. Schmidt, St. Louis, for appellant.

Samuel A. Goldblatt, William L. Mason, Jr., St. Louis, for respondent.

WESTHUES, Chief Justice.

Plaintiff Osie Fairley filed this action in the Circuit Court of the City of St. Louis against the St. Louis Public Service Company to recover damages for injuries alleged to have been sustained while she was a passenger on a bus operated by the defendant company. A trial resulted in a verdict and judgment in plaintiff's favor for $2,000. On appeal, the St. Louis Court of Appeals remanded the case for retrial on the question of damages only. Fairley v. St. Louis Public Service Co., 352 S.W.2d 393. On application of the defendant, the cause was transferred to this court.

In the circuit court, the cause was submitted to a jury on the theory of res ipsa loquitur. On appeal, the Court of Appeals held that such a submission was proper. On the application to transfer, this court was of the opinion that the case should not have been submitted on res ipsa loquitur but should have been submitted on specific negligence. We are still of that opinion.

On the morning of July 6, 1958, plaintiff was a passenger on a bus operated by the defendant. As the bus approached the intersection of Waterman Avenue and Union Boulevard, plaintiff pulled the cord which operated the buzzer signaling her intention of getting off the bus. She was sitting next to a window and a man occupied the seat beside plaintiff on the aisle side. This man stepped into the aisle to permit the plaintiff to pass. As plaintiff slid over the seat to the aisle, she felt a sting on her left leg below the knee. After she reached the aisle, she noticed her leg was bleeding. The man who had been sitting next to her gave her a handkerchief which another passenger, a Mrs. Thompson, tied around plaintiff's leg. Later, she was taken to a hospital. (For a more complete statement of plaintiff's injuries, see the opinion of the Court of Appeals, supra.) Plaintiff did not examine the seat. However, Mrs. Ruby Thompson, a plaintiff's witness who had aided plaintiff with her injuries, testified that she did examine the seat and found a metal object protruding from the seat. Mrs. Thompson, in describing the metal object, stated:

"A Well, as near as I can describe it, it was a flat object, and it seemed to be cut and left little jagged ends on this piece of iron, whatever you call it.

\* \* \* \* \* \*

"Q Now, when you noticed this thing protruding, you say you had to look down?

"A Yes, you have to look down.

"Q It was visible to the naked eye; is that correct?

"A Yes.

\* \* \* \* \* \*

"Q Now, you say that you saw this piece here for about ten minutes, is that correct?

"A Yes. I was on the bus and sat back in this seat and felt this thing and sat there and felt it.

"Q When you noticed this piece of metal, could you describe the condition of that piece of metal?

"A Well, it's a flat piece of metal and it had been cut, it had a jagged end.

"Q Did you notice anything else about the piece of metal, anything on it that you could describe?

"A Nothing but the jagged end.

"Q Was it painted?

"A No, unpainted."

Dr. Vaughn Payne testified he treated plaintiff after her injury. Note his evidence with reference to plaintiff's injury:

"Q Now Doctor, did you notice any cut or anything on the leg?

"A She had a laceration or puncture wounds in the same area where that blood was coming from.

"Q Could you describe this area, Doctor, or this puncture or cut that you just described?

"A Well, it was cut, a wound. You could tell it was cut because it was kind of jagged. It had—some blood had already clotted in the wound. Of course, I didn't do a whole lot of washing out because I was trying to control the hemorrhage at that time myself.

"Q Now Doctor, what did you do on that first trip, what did you do for Mrs. Fairley?

"A Well, we cleaned it up on the outside and then pulled the wound together with adhesive tape because I didn't want to put a suture in it because it was probably infected and I didn't want to sew up any infection in her leg, so I pulled it together with adhesive plaster."

On cross-examination, defendant's counsel asked Dr. Payne if due to plaintiff's condition of having varicose veins the bleeding might have been the result of a spontaneous

rupture. Note the doctor's evidence on this question:

"Q What would be the force that pushes it against this object that would cause the vein to rupture?

"A Well, it is more due to the type of object which it goes against, because a sharp object would almost immediately rupture with almost no force at all.

"Q That's right. So then Doctor it would be your testimony that there is a relation to the force that you place against the particular object might have something to do with the rupture of a vein?

"A No, my testimony was that we had a cut there, a laceration. There is no question about it being cut. The vein was not burst in my opinion, the vein was cut."

Dr. E. C. Funsch testified as a witness for the defendant. The doctor had examined plaintiff a few days before the trial. Note a portion of his evidence:

"Q Now Doctor, this scar that you were talking about, was there anything unusual about that?

"A No, it was just a superficial scar.

"Q Had this scar shown the normal healing process?

"A It was healed.

"Q Doctor, was there anything, as you said a thickening, did you find any swelling or thickening about her legs?

"A No. Some of her veins of her legs were a little large, but the skin was normal."

Defendant offered in evidence a seat (from a bus) similar to but not the one on which plaintiff claimed to have been injured. This seat was Exhibit A. On cross-examination of Dr. Funsch, the following occurred:

"Q Now Doctor, I am going to call your attention to Defendant's Exhibit 'A' and ask you to look at these two metal clamps on the sides of it Doctor, and ask you to move the seat this way, please Doctor (indicating).

"(Witness moves seat)

"Q Would a person brushing against one of those, would that cause a laceration?

"A Sure.

"MR. SCHMIDT: I would like to object to that as calling for speculation on the part of the Doctor.

"THE COURT: He is qualified as an expert. The objection is overruled.

"A I don't think it takes an expert to tell that. You could skin your shin on that."

Defendant's negligence, if any, in this case, as shown by plaintiff's evidence, was having a metal strip with a jagged edge supporting the bus seat which was likely to produce an injury. Defendant says the metal strip was in fact a clamp to hold the seat cushion to the frame. The unsafe condition, if it was so, was not the result of an unusual occurrence but was a part of the permanent equipment on the bus. Plaintiff's evidence left nothing to speculation. The evidence of plaintiff was specific on the question of what caused her injury. The court's instruction submitting the case should have been, in substance, one that informed the jury that the defendant was liable only if the jury found that the defendant was negligent in having the metal strip, as described in plaintiff's evidence, on the bus seat and that such a metal strip rendered the equipment of the bus unsafe and that such unsafe condition caused plaintiff's injury.

In Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79, 1. c. 85 (13), this court had before

it a case wherein a suitcase was caused to fall from an overhead baggage rack of a coach and to strike the plaintiff. Plaintiff's evidence was that there was a violent sidewise lurch of the train coach causing the suitcase to fall. It was contended by the defendant that plaintiff's evidence tended to prove specific negligence. This court, in holding that contention to be faulty, stated: "The circumstance of the 'unusual and extraordinarily violent sidewise lurch,' as we see it, may be reasonably inferred to have been a circumstance, a result, due to 'some negligence,' the proximate cause of plaintiff's injury, of which negligence the circumstance itself and the fact of the carrier-defendant's exclusive control of the train afford bases. The extraordinarily violent lurch 'speaks' of *some kind* of negligence, but does not 'spell out' *the* specific fault. Belding v. St. Louis Public Service Co., supra, [Mo.App., 205 S.W.2d 866]. And compare Jones v. Thompson, 353 Mo. 730, 184 S.W.2d 407; La Vigne v. St. Louis Public Service Co., Mo.Sup., 181 S.W.2d 541; Jones v. Kansas City Public Service Co., supra, [236 Mo.App. 794, 155 S.W.2d 775."

In the case before us, plaintiff's evidence did "spell out" the specific negligence which was claimed to have caused the injury. Our ruling is that the trial court erred in submitting the case to a jury by an instruction on the theory of the res ipsa loquitur doctrine.

Defendant, in its brief, asserts that the trial court should have directed a verdict for the defendant for the reason that the evidence was insufficient to sustain a plaintiff's verdict. A reading of the evidence quoted supra should be sufficient to demonstrate that a jury could find that the defendant was negligent in furnishing a seat to passengers not reasonably safe and likely to cause injury. We rule the point against the defendant.

Defendant says further that the instruction on the measure of damages was erroneous because it authorized damages for loss of *future* wages and *future* medical treatment and expense when there was no evidence to support such a submission. The evidence as to future medical treatment is vague and uncertain and the record contains no evidence as to future loss of wages. On a retrial, such errors may be avoided either by not submitting such items in the damage instruction or by plaintiff's offering direct evidence in support of such claims.

The judgment of the trial court is reversed and the cause remanded for retrial. It is so ordered.

All concur